IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **Gary Mattos** et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>**American Federation of State, County and Municipal Employees, AFL-CIO, Council 3**,<br><br>    Defendant. | Case No. 1:19-cv-02539-GLR |

**REPLY MEMORANDUM OF DEFENDANT AFSCME COUNCIL 3
IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................ii

INTRODUCTION ....................................................................................................................................1

ARGUMENT .............................................................................................................................................2

    A.    The Union Is Not Liable for Damages for Relying on Maryland Law at a Time When That Law Was Indisputably Constitutional Under Supreme Court Precedent ..................................................................................................................................2

        1.    As Courts Unanimously Have Held, There Is a Good-Faith Defense to Liability Under Section 1983 for Private Parties Who Rely on Presumptively Valid State Law ..........................................................................................................2

        2.    Plaintiffs Cannot Avoid Application of the Good-Faith Defense by Looking to Common-Law Scienter Requirements .............................................................6

    B.    Even Assuming *Arguendo* that the Supreme Court's Decision in *Janus* Is Retroactive, That Does Not Determine the Remedy to Which Plaintiffs Are Entitled ..................................................................................................................................10

    C.    Plaintiffs Cannot Avoid the Good-Faith Defense by Characterizing the Relief They Seek as Restitution ........................................................................................................11

CONCLUSION .......................................................................................................................................12

CERTIFICATE OF SERVICE ...............................................................................................................14

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abood v. Detroit Board of Education*,
    431 U.S. 209 (1977)...................................................................................................................1

*Americans United v. Prison Fellowship Ministries, Inc.*,
    509 F.3d 406 (8th Cir. 2007).....................................................................................................5

*Carey v. Inslee*,
    364 F. Supp. 3d 1220 (W.D. Wash. 2019)................................................................................3

*Clement v. City of Glendale*,
    518 F.3d 1090 (9th Cir. 2008) ...............................................................................................3, 6

*Connecticut v. Doehr*,
    501 U.S. 1 (1991).......................................................................................................................7

*Crockett v. NEA-Alaska*,
    367 F. Supp. 3d 996 (D. Alaska 2019) .................................................................................4, 8

*Diamond v. Penn. State Educ. Ass'n*,
    2019 WL 2929875 (W.D. Pa. July 8, 2019).........................................................................8, 9

*Dodds v. Richardson*,
    614 F.3d 1185 (10th Cir. 2010) .................................................................................................7

*Ellis v. Railway Clerks*,
    466 U.S. 435 (1984)............................................................................................................ 11, 12

*Janus v. AFSCME Council 31* (*Janus II*),
    --- F.3d ---, 2019 WL 5704367 (7th Cir. Nov. 5, 2019) ................................................*passim*

*Jarvis v. Cuomo*,
    660 F. App'x 72 (2d Cir. 2016)..................................................................................................6

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
    20 F.3d 1250 (3d Cir. 1994) .......................................................................................................6

*Lemon v. Kurtzman* (*Lemon I*),
    403 U.S. 602 (1971)...................................................................................................................5

*Lemon v. Kurtzman* (*Lemon II*),
    411 U.S. 192 (1973)...................................................................................................................5

*Lugar v. Edmondson Oil Co.*,
 457 U.S. 922 (1982) ........................................................................................................ 2, 4, 9, 11

*Mooney v. Ill. Educ. Ass'n*,
 --- F.3d ---, 2019 WL 5704368 (7th Cir. Nov. 5, 2019) ................................................... 1, 11

*Neely v. United States*,
 546 F.2d 1059 (3d Cir. 1976) ................................................................................................ 11

*Ogle v. OCSEA*,
 397 F. Supp. 3d 1076 (S.D. Ohio 2019) ................................................................................. 4

*Overbey v. Mayor of Baltimore*,
 930 F.3d 215 (4th Cir. 2019) ................................................................................................ 12

*Owen v. City of Independence*,
 445 U.S. 622 (1980) ............................................................................................................... 5

*Pasha v. United States*,
 484 F.2d 630 (7th Cir. 1973) ................................................................................................ 11

*Pinsky v. Duncan*,
 79 F.3d 306 (2d Cir. 1996) ................................................................................................. 4, 6

*Reynoldsville Casket Co. v. Hyde*,
 514 U.S. 749 (1995) ........................................................................................................ 10, 11

*Snyder v. King*,
 745 F.3d 242 (7th Cir. 2014) .................................................................................................. 6

*United States v. Lewis*,
 478 F.2d 835 (5th Cir. 1973) ................................................................................................ 11

*Vector Research, Inc. v. Howard & Howard Attorneys P.C.*,
 76 F.3d 692 (6th Cir. 1996) .................................................................................................... 6

*Wyatt v. Cole*,
 504 U.S. 158 (1992) ............................................................................................................ 2, 8

*Wyatt v. Cole*,
 994 F.2d 1113 (5th Cir. 1993) ................................................................................................ 6

**Statutes**

28 U.S.C. § 1346(a)(2) ................................................................................................................ 11

42 U.S.C. § 1983 ................................................................................................................. *passim*

## **INTRODUCTION**

The question before this Court is whether a private party can be liable for monetary relief under 42 U.S.C. § 1983 for engaging in conduct that, at the time, was both expressly authorized by state law and indisputably constitutional under Supreme Court precedent.

In our opening brief, we pointed out that all 19 federal district courts across the country to address this question in the identical context as presented here—a union that collected agency fees from nonmembers in reliance on the Supreme Court's precedent in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977)—have held that the good-faith defense protects private parties from liability under Section 1983 in these circumstances. Since then, the first court of appeals to squarely address such a claim—the U.S. Court of Appeals for the Seventh Circuit—has joined this consensus in a pair of opinions. *See Janus v. AFSCME Council 31* (*Janus II*), --- F.3d ---, 2019 WL 5704367 (7th Cir. Nov. 5, 2019); *Mooney v. Ill. Educ. Ass'n*, --- F.3d ---, 2019 WL 5704368 (7th Cir. Nov. 5, 2019). As the Seventh Circuit explained in *Janus II*: "The Rule of Law requires that parties abide by, and be able to rely on, what the law *is*, rather than what the readers of tea-leaves predict that it might be in the future. . . . Until [the Supreme Court in *Janus*] said otherwise, AFSCME had a legal right to receive and spend fair-share fees collected from nonmembers as long as it complied with state law and the *Abood* line of cases." 2019 WL 5704367, at *11 (emphasis in original).

This Court should follow the Seventh Circuit, along with the 19 district courts, and dismiss Plaintiffs' claim for agency fees remitted to the Union at a time when *Abood* was governing law.

**ARGUMENT**

**A. The Union Is Not Liable for Damages for Relying on Maryland Law at a Time When That Law Was Indisputably Constitutional Under Supreme Court Precedent**

Plaintiffs begin by arguing that all of the pre-*Janus* court of appeals opinions that have recognized a good-faith defense for private parties to claims brought under 42 U.S.C. § 1983 are distinguishable, Pls.' Br. (ECF No. 16) 2-9, before going on to make the more ambitious claim that no good-faith defense exists under Section 1983 at all, *id.* 10-17. We take Plaintiffs' arguments in reverse order, first showing that there is a good-faith defense to monetary liability under Section 1983 for private parties who rely on the law as it exists at the time of their actions, and then showing the defense is available to defend against the constitutional violations alleged here.

    1.    *As Courts Unanimously Have Held, There Is a Good-Faith Defense to Liability Under Section 1983 for Private Parties Who Rely on Presumptively Valid State Law*

    *a.*    In our opening brief, we pointed out that five courts of appeals, as well as numerous district courts, have held that there is a good-faith defense available to private parties to defend against claims for monetary relief under Section 1983. Union Opening Br. (ECF No. 14-1) 7. Since then, the Seventh Circuit has joined that group, holding—on the same facts presented here—that "we recognize a good-faith defense for private parties who act under color of state law for purposes of section 1983." *Janus II*, 2019 WL 5704367, at *12.

In taking the contrary position that there is no good-faith defense for private parties to claims under Section 1983 at all—an argument that never has been accepted by any court—Plaintiffs contend that "[a] good faith defense conflicts with the text of Section 1983." Pls.' Br 10. But as the Seventh Circuit recognized, "[t]he problem with [Plaintiffs]' absolutist position . . . is that the Supreme Court abandoned it long ago, when it recognized that liability under section 1983 is subject to common-law immunities that apply to all manner of defendants." *Janus II*, 2019 WL 5704367, at *8. Indeed, an affirmative defense based on a private defendant's good faith is precisely what the

Supreme Court referenced when, in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), and *Wyatt v. Cole*, 504 U.S. 158 (1992), it suggested such a defense as a means of resolving the problem of imposing monetary liability on private parties who comply with presumptively valid state statutes. *See* Union Opening Br. 5-7.

Similarly lacking in legal support is Plaintiffs' contention that, if this Court recognizes a good-faith defense, "*any* defendant that acted 'under color of any statute' . . . would be shielded from liability." Pls.' Br. 11 (emphasis added). That contention is wholly misplaced, for at least two reasons. First, the relevant question is whether a plaintiff is barred from obtaining *monetary relief* from a private party who acted in good-faith reliance on a state statute. Thus, a plaintiff who made out all the elements of a Section 1983 violation still could secure prospective injunctive relief, notwithstanding the defendant's good faith.

Second, and even more to the point, Plaintiffs are seriously mistaken in suggesting that everyone who acts "under color of any statute" necessarily does so in good faith. For example, if—contrary to fact—the Union had continued to collect agency fees *after* the Supreme Court's decision in *Janus*, it would not be able to avail itself of the good-faith defense to defend against a claim that the collection of such post-*Janus* fees was unconstitutional. In addition, many Section 1983 cases will involve fact patterns not raising an issue of the constitutionality of a statute at all. *See, e.g.*, *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008) (claim against tow truck for following police officer's order to tow vehicle). Such cases may or may not give rise to valid claims of good faith.

But whatever the outer bounds of the good-faith defense, it plainly covers a defendant who relies on a state law that, at the time, was indisputably constitutional under Supreme Court precedent, as AFSCME Council 3 did here. *See Janus II,* 2019 WL 5704367, at *12 ("We predict that only rarely will a party successfully claim to have relied substantially and in good faith on both a state statute *and* unambiguous Supreme Court precedent validating that statute." (emphasis in original));

3

*Carey v. Inslee*, 364 F. Supp. 3d 1220, 1232 (W.D. Wash. 2019) ("[T]his case does not involve a novel application of a broad constitutional holding; instead, it involves the exact type of conduct that the Court had sanctioned in a previous case. . . . *Abood* was the law of the land and the [union]'s conscious compliance with that ruling can establish its good faith as a matter of law.").[1]

  *b.* Plaintiffs go on to argue that there should not be a good-faith defense on the ground that, because private defendants typically are not entitled to qualified immunity, it would be "anomalous" to allow them "the functional equivalent of immunity under the guise of a 'defense.'" Pls.' Br. 13. There is no anomaly. Indeed, the prospect that private parties would, on the one hand, enjoy substantive protection closely equivalent to that of qualified immunity but, on the other hand, lack the significant procedural protections of qualified immunity such as immediate appealability, is precisely the balance the Supreme Court endorsed in considered dicta in *Lugar* as well as in *Wyatt*. *See Janus II*, 2019 WL 5704367, at *8 ("Mr. Janus rejects the line that the Court drew between qualified immunity and a defense to liability; he sees it as nothing but a labeling game. But *Wyatt I* directly refutes this criticism."); *Ogle v. OCSEA*, 397 F. Supp. 3d 1076, 1090 (S.D. Ohio 2019) ("the unavailability of qualified immunity has no effect on the availability of [the union]'s good faith defense"); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1004 (D. Alaska 2019) (noting that, in *Wyatt*, the Court recognized "an affirmative defense based on good faith . . . as separate and distinct from qualified immunity").

  *c.* Plaintiffs' policy-based arguments fare no better. There is no merit to Plaintiffs' attempt to frame the issue as whether it is "fair to let wrongdoers keep ill-gotten gains." Pls.' Br. 14.

---

[1] Plaintiffs' contention that there is no common law support for a good-faith defense to Section 1983, Pls.' Br. 12 n.6, is also erroneous. As we noted in our opening brief, both Justice Kennedy's and Chief Justice Rehnquist's opinions in *Wyatt*—collectively joined by a majority of the Court— emphasized the common-law basis for the good-faith defense. Union Opening Br. 6. *See also Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("There is common law authority that it is objectively reasonable to act on the basis of a statute not yet held invalid.").

The issue is whether AFSCME Council 3 was justified in relying on valid state law and Supreme Court precedent in accepting and expending agency fees for the purpose of benefiting all represented employees, union and nonunion alike, prior to the Supreme Court's decision in *Janus*. There was nothing "ill-gotten" about that, other than the Supreme Court's determination, after the fact, that its understanding of the First Amendment for the past 40 years had been mistaken. As the Seventh Circuit observed in *Janus II*, because agency feepayers received the union's "collective bargaining and other representative activities over the years, . . . there was no unjust 'windfall' to the union . . . but rather an exchange of money for services." 2019 WL 5704367, at *11.

Indeed, the good-faith defense under Section 1983 parallels the courts' treatment of reliance interests in determining equitable remedies. Thus, for example, after the Supreme Court struck down under the Establishment Clause a Pennsylvania statute authorizing state funding of parochial schools, *Lemon v. Kurtzman*, 403 U.S. 602 (1971) (*Lemon I*), the district court declined to enjoin the State from continuing to make payments to reimburse the schools for services they had rendered prior to the *Lemon I* decision. The Supreme Court affirmed, explaining that "reliance interests weigh heavily in the shaping of an appropriate equitable remedy." *Lemon v. Kurtzman*, 411 U.S. 192, 203 (1973) (plurality op.) (*Lemon II*). Noting the expenses incurred by the schools in reliance on the state statute, the Court emphasized—in terms that are fully applicable here—that "state officials and those with whom they deal are entitled to rely on a presumptively valid state statute." *Id.* at 209. *See also Americans United v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 426-28 (8th Cir. 2007) (relying on *Lemon II* to reverse trial court's remedial order that prison rehabilitation programs had to pay back funds they had received in violation of the Establishment Clause, because the trial court "gave no weight to the fact that specific statutes, presumptively valid, authorized the … funding").

To the extent Plaintiff argues that an organizational defendant like AFSCME Council 3 should not be able to avail itself of the good-faith defense under *Owen v. City of Independence*, 445 U.S.

5

622 (1980), in which the Court held that qualified immunity was unavailable to municipalities sued under Section 1983, the answer is that private parties stand on different footing than government actors with respect to their ability to rely in good faith on existing law. It would make little sense for private individuals—but not *associations* of private individuals such as businesses or labor unions—to have the ability to manage their affairs in reliance on existing state laws and judicial precedents. Unsurprisingly, therefore, there is no support for distinguishing private individuals and private associations in this way; the courts of appeals have applied the good-faith defense to private individuals and private associations alike. *See, e.g.*, *Janus II*, *supra* (labor union); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692 (6th Cir. 1996) (law firm); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994) (law firm); *Clement*, *supra* (corporation); *Jarvis v. Cuomo*, 660 F. App'x 72 (2d Cir. 2016) (labor union).[2]

\* \* \*

For these reasons, as every court to address the issue has recognized, Plaintiffs are wrong to argue that there is no good-faith defense available to private parties under Section 1983 who rely on the law as it exists at the time of their actions.

    2.    *Plaintiffs Cannot Avoid Application of the Good-Faith Defense by Looking to Common-Law Scienter Requirements*

Despite arguing that the good-faith defense to Section 1983 claims does not even exist and should not be recognized at all, Plaintiffs also argue that the courts of appeals' good-faith-defense cases prior to *Janus II*, such as *Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993), and *Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996), are distinguishable from the situation at issue here. Pls.' Br. 2-9. More specifically, Plaintiffs argue that, in those procedural-due-process cases—which alleged that the

---

[2] It also bears emphasis that municipalities are potentially liable under Section 1983 only for their own policies, not merely for following state law. *See, e.g.*, *Snyder v. King*, 745 F.3d 242, 246-47 (7th Cir. 2014).

6

plaintiff's property was taken under state attachment, garnishment, or replevin statutes without sufficient notice—"malice and probable cause" were necessary "elements" to the deprivations at issue. Pls.' Br. 7. In contrast, Plaintiffs argue, "malice and lack of probable cause are not elements of, or a defense to, a First Amendment deprivation." *Id.* 8.

The Seventh Circuit in *Janus II* rejected the argument that these appeals-court cases should be read as narrowly as Plaintiffs suggest when the court observed that "every federal appellate court to have decided the question has held that, while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983." *Janus II*, 2019 WL 5704367, at *7 (citing cases). That reading is plainly correct because, under the facts of *Wyatt*, *Pinsky*, and the other procedural-due-process cases, while the defendant's state of mind would have been relevant to a *common-law* claim of abuse of process or malicious prosecution, state of mind was *not* relevant to the *constitutional* claims at issue in those cases. *E.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1209 n.2 (10th Cir. 2010) ("procedural due process violations focus on the sufficiency of the procedural protections afforded the plaintiff, not the state of mind of the officials who establish or apply the policies").[3]

Put another way, while it is true that "[m]alice and lack of probable cause are not elements of or a defense to, a First Amendment deprivation," Pls.' Br. 8, it is equally true that they were not "elements of, or defenses to" the procedural-due-process violations at issue in *Wyatt* and *Pinsky*, either. If it were the case that the availability of the good-faith defense turned on the existence of a state-of-mind element in the claim of or defense to the alleged constitutional deprivation, the

---

[3] Thus, for example, when the *Pinsky* case, then styled as *Connecticut v. Doehr*, 501 U.S. 1 (1991), was before the Supreme Court on the merits of the due process claim, the Court ruled that the plaintiff's constitutional due process rights had been violated by the prejudgment attachment of his property, executed pursuant to a Connecticut statute, without any consideration of the defendant's state of mind. *See id.* at 11-18.

7

outcomes in *Wyatt*, *Pinsky*, and similar due process cases involving attachment, garnishment, or replevin statutes would have been different.

In light of the foregoing, it should not be surprising that none of the courts faced with a claim for the repayment of agency fees collected before the Supreme Court's decision in *Janus* has accepted the argument that the applicability of the good-faith defense turns on the nature of the constitutional violation at issue. *See, e.g.*, *Janus II*, 2019 WL 5704367, at *10 ("As several district courts have commented, the Supreme Court in *Wyatt I* embarked on the search for the most analogous tort only for *immunity* purposes—the Court never said that the same methodology should be used for the good-faith defense." (emphasis in original)); *Crockett*, 367 F. Supp. 3d at 1005 (rejecting plaintiffs' scienter argument because "the impetus for such a defense is rooted in concerns about the unfairness that would result from holding private parties retrospectively liable under § 1983 for following the law"); *Diamond v. Penn. State Educ. Ass'n*, 2019 WL 2929875, at *25 (W.D. Pa. July 8, 2019) (rejecting same argument because "when the *Wyatt* Court suggests that a good-faith defense may be available to private parties exposed to § 1983 liability, the Court did not refer to analogous common-law torts"); *see also* Union Opening Br. 4 n.2 (citing additional cases).

While that is sufficient to dispose of Plaintiffs' argument that the good-faith defense only can be asserted to defend against "certain constitutional deprivations," Pls.' Br. 2, we hasten to add that the outcome would be the same even under a violation-specific approach. That is because the apt analogy would be the same here as in *Wyatt*, *Pinsky*, and similar cases—the tort of abuse of process or wrongful attachment.

At common law, as the Supreme Court explained in *Wyatt*, the abuse-of-process tort provided a "cause[ ] of action against private defendants for unjustified harm arising out of the misuse of governmental processes." 504 U.S. at 164. Here, Plaintiffs' complaint is that the Union caused the State of Maryland, in effect, to attach their wages and deduct agency fees from their

paychecks for transmission to the Union under the provisions of state law and the collective bargaining agreement between the Union and the State. Without this use of governmental processes, the Union would have had no way of "seiz[ing] agency fees from Plaintiffs," Pls.' Br. 8, as Plaintiffs put it. There would have been no exaction of agency fees and no issue of Section 1983 liability. It is precisely through this alleged misuse of governmental processes to attach their wages that Plaintiffs claim that AFSCME Council 3, a private party, deprived them of their constitutional rights. Their claim thus is on all fours with the claims based on the use of state replevin and attachment statutes in *Wyatt*, *Pinsky*, and similar cases. *See, e.g.*, *Janus II*, 2019 WL 5704367, at *10 (holding that, if it were necessary to determine the most analogous tort to the plaintiff's constitutional claim, "we are inclined to agree with AFSCME that abuse of process comes closest").[4]

Indeed, a private party sued under Section 1983 pursuant to *Lugar* for relying on a state statute is *necessarily* being charged with (mis-)use of governmental processes, for without the use of some governmental process there could be no Section 1983 liability for the private defendant in the first instance. For example, had AFSCME Council 3 somehow "seized" money or property from the Plaintiffs unaided by the government, there would be no state action and hence no First Amendment violation at all. *See Lugar*, 457 U.S. at 937. The relevant question for application of the good-faith defense is thus whether the alleged misuse of governmental processes was undertaken in reliance on a presumptively valid state statute—regardless of the nature of the particular statute relied upon.

---

[4] Notably, no court has found the tort of conversion to be an apt analogy here. *See, e.g.*, *Janus II*, 2019 WL 5704367, at *10 (fact that union had right to obtain agency fees under collective bargaining agreement "rules out conversion" as most analogous tort); *Diamond*, 2019 WL 2929875, at *26 (rejecting conversion analogy because "[t]his is not a case in which someone walked off with another's property. Instead, this case involved Union Defendants compelling Plaintiffs to support particular speech through the state-created processes found in [Pennsylvania state law]" (quotation omitted)).

Against this background, Plaintiffs' attempt to limit the good-faith defense would serve no purpose other than to deny the defense arbitrarily to some nongovernmental defendants who relied just as reasonably on a presumptively valid state statute as did the defendants in *Wyatt* and other cases involving attachment or garnishment statutes. Here, AFSCME Council 3 relied on the Maryland statute authorizing agency fees—a statute that not only was presumptively valid but had been expressly upheld as constitutional by the Supreme Court in *Abood*. The good-faith defense protects the Union from monetary liability for having so relied.

### B. Even Assuming *Arguendo* that the Supreme Court's Decision in *Janus* Is Retroactive, That Does Not Determine the Remedy to Which Plaintiffs Are Entitled

Plaintiffs also devote a section of their brief to arguing that the Supreme Court's *Janus* decision is retroactive. Pls.' Br. 17-18. For purposes of this motion to dismiss, the Union assumes *arguendo* that the *Janus* decision had retroactive effect, as did the Seventh Circuit in *Janus II*. *See* Union Opening Br. 11 n.4; *Janus II*, 2019 WL 5704367, at *5-*6. But, as the *Janus II* court held, Plaintiffs are incorrect to suggest that the retroactive effect of the Supreme Court's decision in *Janus* precludes application of the remedial good-faith defense:

> As the Supreme Court wrote in *Davis v. United States*, 564 U.S. 229 (2011), retroactivity and remedy are distinct questions. "Retroactive application does not . . . determine what 'appropriate remedy' (if any) the defendant should obtain." *Id.* at 243; *see also American Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 189 (1990) (plurality opinion) ("[T]he Court has never equated its retroactivity principles with remedial principles . . . ."). It thus does not necessarily follow from retroactive application of a new rule that the defendant will gain the precise type of relief she seeks. *See Powell v. Nevada*, 511 U.S. 79, 84 (1994). To the contrary, the Supreme Court has acknowledged that the retroactive application of a new rule of law does not "deprive[ ] respondents of their opportunity to raise . . . reliance interests entitled to consideration in determining the nature of the remedy that must be provided." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991).

2019 WL 5704367, at *8.

The Supreme Court's decision in *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995), on which Plaintiffs rely in their brief, actually reinforces the precept that "as courts apply 'retroactively'

10

a new rule of law to pending cases, they will find instances where that new rule, for well-established legal reasons, does not determine the outcome of the case," *id.* at 758-59, because issues of "remedy" remain to be decided, such as where there is "a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief." *Id.* at 759. As the Supreme Court observed in *Lugar*, the availability of a good-faith defense for a private party who relied on a seemingly valid state law is such a "remedial issue[ ]." *Lugar*, 457 U.S. at 942 n.23 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 174 n.44 (1970)).[5]

### C. Plaintiffs Cannot Avoid the Good-Faith Defense by Characterizing the Relief They Seek as Restitution

Finally, Plaintiffs argue that AFSCME Council 3 must repay the agency fees it collected in reliance on *Abood* because it "should have known that monies or property taken from individuals under statutes later found unconstitutional must be returned to their rightful owner." Pls.' Br. 19. The Seventh Circuit rejected a similar restitution-based argument in the companion case to *Janus II*, *Mooney v. Illinois Education Association*, --- F.3d ---, 2019 WL 5704368 (7th Cir. Nov. 5, 2019), holding that the plaintiff's monetary demand for pre-*Janus* agency fees was a legal claim—not an equitable claim for restitution—that was barred by the good-faith defense.

In all events, regardless of whether Plaintiffs are correct that fines paid to the government pursuant to statutes declared unconstitutional always must be returned,[6] such a rule would have no

---

[5] *Reynoldsville Casket*, by contrast, did *not* involve a bona fide remedial issue. In *Reynoldsville Casket*, the Supreme Court held that the Ohio Supreme Court's attempt to toll the deadline to sue for a plaintiff who relied on an unconstitutional statute of limitations could *not* be classified as a remedial determination; it instead was an attempt to circumvent the retroactive application of a prior Supreme Court decision. 514 U.S. at 753-54.

[6] The court of appeals cases that Plaintiffs cite on page 19 of their brief do not stand for such a sweeping legal proposition; rather, they simply stand for the proposition that federal courts have the *authority* to order the return of fines when a criminal conviction is overturned. *Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976) (authority in proceeding brought under 28 U.S.C. § 1346(a)(2)); *Pasha v. United States*, 484 F.2d 630 (7th Cir. 1973) (authority in *coram nobis* proceeding); *United States v. Lewis*, 478 F.2d 835 (5th Cir. 1973) (same).

bearing on the situation here: where a private party relied on state law—along with directly-on-point Supreme Court precedent—to collect and expend money to provide representational services to the entire bargaining unit, including Plaintiffs. The Supreme Court's decision in *Ellis v. Railway Clerks*, 466 U.S. 435 (1984), is far closer to the mark. In *Ellis*, which arose under the *Abood* regime, the plaintiffs challenged as unconstitutional the assessment of the portion of agency fees that paid for a death benefit provided to bargaining-unit members. The Court held that, even assuming it was unconstitutional to charge nonmembers for this benefit, the equities did not call for restitution of that portion of the agency fee because nonmembers remained entitled to the benefits of the plan. *Id.* at 454-55. Similarly, here, all members of the bargaining unit—including Plaintiffs—received benefits in exchange for the agency fees that were remitted to AFSCME Council 3 on their behalf, in the form of representational services. As a result, no claim for restitution could lie. *See Janus II*, 2019 WL 5704367, at *11-*12.[7]

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in AFSCME Council 3's opening brief, Defendant AFSCME Council 3's motion to dismiss should be granted.

---

[7] In our opening brief, we showed that Plaintiffs do not have standing to bring a claim for a declaratory judgment that the Union violated Plaintiffs' constitutional rights by collecting agency fees prior to the Supreme Court's decision in *Janus*. Union Opening Br. 12-13. In response, Plaintiffs—without attempting to distinguish any of the cases we cited—assert that "[i]f Plaintiffs' claim for monetary damages may go forward, Plaintiffs also have standing to request a declaratory judgment that a past constitutional violation has occurred." Pls.' Br. 2 n.1. But as the Fourth Circuit has reiterated, "[t]he standing requirement applies to each claim that a plaintiff seeks to press, and 'a plaintiff must demonstrate standing separately for each form of relief sought.'" *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 230 (4th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (other citation omitted)).

Dated:   November 15, 2019

                Respectfully submitted,

                 /s/
                Jacob Karabell

                Jacob Karabell
                Adam Bellotti
                BREDHOFF & KAISER, P.L.L.C.
                805 Fifteenth Street N.W., Suite 1000
                Washington, DC  20005
                (202) 842-2600
                jkarabell@bredhoff.com
                abellotti@bredhoff.com

                *Counsel for Defendant AFSCME Council 3*

**CERTIFICATE OF SERVICE**

  I, Jacob Karabell, an attorney, hereby certify that on November 15, 2019, I caused the foregoing Reply Memorandum of Defendant AFSCME Council 3 in Support of Motion To Dismiss to be filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. I further certify that as of November 15, 2019, there are no nonregistered participants upon whom service by U.S. Mail is required.

                     /s/
                     Jacob Karabell